# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RENE ANTONIO, | : | |
| Plaintiff, | : | Hon. Joseph H. Rodriguez |
| v. | : | |
| | | Civil Action No. 1:17-cv-09092 |
| HARRAH'S ATLANTIC CITY PROPCO, L.L.C. | : | |
| D/B/A HARRAH'S RESORT ATLANTIC CITY | | |
| AND HARRAH'S ATLANTIC CITY | : | **OPINION** |
| OPERATING COMPANY, L.L.C. | | |
| | : | |
| Defendants, | : | |
| v. | | |
| | : | |
| SHANTASHA ROSS, | : | |
| Third Party Defendant. | | |

This matter is before the Court on Defendants' motion for summary judgment [Dkt. No. 23], pursuant to Fed. R. Civ. Pro. 56. The Court has considered the parties' written submissions and the arguments advanced orally at the hearing held on February 19, 2020. The only remaining issue for the Court to address is whether Plaintiff has established a genuine issue of material fact as to whether Defendants are liable for negligence. For the following reasons, the Court finds that no genuine issue of material fact exists and therefore, Defendants' motion for summary judgment will be granted.

1

I.  Factual and Procedural Background

This claim arises out of Renee Antonio's ("Plaintiff") fall into the pool at Harrah's Pool After Dark nightclub in the early morning hours of October 25, 2015.[1] [Dkt. No. 23-1, Doc. 1, at ¶ 1].

Plaintiff arrived at Harrah's Resort in Atlantic City at around 11:30 P.M. on October 24, 2015, to attend an "Epic Saturdays" pool party hosted by celebrity guest Dennis Rodman. (Id. at ¶¶ 8, 10); [Dkt. No. 1 (Compl.) at ¶ 13]. Harrah's Pool After Dark nightclub is only open a few nights of the week. (Coulter Dep. 15:6-11.) The pool is located in the middle of the dance floor and patrons are permitted to swim when the club is open. (Id. at 33:19-21; Dkt. No. 23-1, Doc. 1, at ¶ 9.) No fences or barriers separate the pool from the dance floor and no signs are posted informing dancers not to push each other in. (Coulter Dep. 35:7-12; Antonio Dep. 31:10-12.) However, a lifeguard is on duty at all times, between twenty-five and thirty-five uniformed control specialists supervise the area,[2] and the entire club is under video surveillance. (Coulter Dep. 12:9-15; 16:2-24; 18:7-8; 36:24; 37:1-3.) Atlantic City Police are also stationed at the club to respond to incidents when necessary. (Id. at 44:2-4.)

Plaintiff entered the pool area at around midnight and started dancing near the water's edge. [Dkt. No. 23-1, Doc. 1, at ¶ 10.] A number of people were dancing around her. [Dkt. No. 25-2, Doc. 2, at ¶ 9.] After a few minutes, Plaintiff struck up a brief

---

[1] Plaintiff's name is misspelled in the caption. She indicated in her deposition that her first name is spelled with two e's. (Antonio Dep. 6:3-4).
[2] Control specialists are Harrah's security guards. (Coulter Dep. 12:9-15; 36:21-23.) Some control specialists are stationed at posts around the room and others patrol the area.

conversation with Shantasha Ross's ("Third Party Defendant") boyfriend about celebrity host, Dennis Rodman. [Dkt. No. 23-1, Doc. 1, at ¶ 11.] Third Party Defendant's boyfriend informed Plaintiff that he, Third Party Defendant, and several of their friends were visiting from New York to celebrate the Third Party Defendant's birthday. (Id. ¶ at 12.) Plaintiff had not met Third Party Defendant before and did not speak to her at that time. (Id. at 13, 21, 22, 24.) Following this short conversation, Third Party Defendant's boyfriend left and Plaintiff took a break from dancing. (Id. at ¶ 14.)

When she returned to the dance floor, Plaintiff resumed her position near the pool's edge. (Id. at ¶ 15.) Plaintiff noticed Third Party Defendant looking at her and whispering to her friends. (Id. at ¶¶ 15-16.) Plaintiff was suspicious of Third Party Defendant's behavior and testified that the way she and her friends were acting made Plaintiff think that "something was going to happen." (Id. at ¶ 17.) Despite her concerns, however, Plaintiff did not speak to Third Party Defendant. (Id. at ¶¶ 13, 21, 22, 24.)

Shortly thereafter, Plaintiff, who was still dancing near the pool, felt Third Party Defendant make contact with the middle of her back, causing her to fall into the water. (Id. at ¶¶ 18, 20.) Plaintiff states that she did not see Third Party Defendant approach, but noticed in her peripheral vision that Third Party Defendant was standing directly behind her when she was knocked into the pool. (Id. at ¶ 19.) Plaintiff also testified that she was unsure whether Third Party Defendant intentionally pushed or accidentally knocked her into the water. (Id. at ¶ 26.) After Plaintiff proceeded to the stairs and exited the pool, (Id. at ¶ 23), she made eye-contact with Third Party Defendant, but again did not say anything to her. (Id. at ¶ 22.)

Plaintiff then told a security guard about the incident and identified Third Party Defendant as having pushed her into the pool. (Id. at ¶ 23.) She then went to the Emergency Room at AtlantiCare. (Antonio Dep. 50:17.) The ER personnel took X-rays of Plaintiff's right hand, which showed eight spiral fractures. (Id. at 51:7-15.) Plaintiff saw several additional doctors, required orthopedic care, and still suffers pain in her right hand. (Id. at 50-76.) Plaintiff's right ring finger is shorter because of the injury and now overlaps her pinky. (Id. at 71:1-10.)

Plaintiff filed the Complaint against Harrah's Atlantic City Operating Company, and Harrah's Atlantic City Propco ("Defendants") on October 24, 2017, alleging negligence (Count I) and Dram Shop statute violations (Count II). (Compl. at ¶¶ 23-36.) Defendants filed an Answer and a Third Party Complaint on December 6, 2017. [Dkt. No. 5.] Third Party Defendant never responded to the complaint and has not yet participated in this litigation.

Defendants moved for summary judgment on May 21, 2019. The court heard oral argument on the motion on February 19, 2020. During the proceedings, the Court narrowed the issues involved in the present matter to include only the narrow question of whether Defendants were required to place more security near and around the pool to prevent patrons like Plaintiff from falling in when the dancing became particularly wild.[3] For the reasons that follow, this Court holds that because such harm was unforeseeable under the circumstances, Defendants were not required to place

---

[3] At the hearing, the Court found that there was no genuine issue of fact as to whether Defendants are liable to Plaintiff under the Dram Shop Act because the record is devoid of any evidence or indication of intoxication. Therefore, summary judgment on Count II is proper, and the only remaining claim in the case, discussed herein, is Plaintiff's negligence under Count I.

additional security around the pool. Defendants' summary judgment motion will be granted.

II.     Standard of Review

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.;

Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256–57. Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the finder of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.    Discussion

"To establish a prima facie case of negligence, a plaintiff must [prove] the following elements: (1) duty of care, (2) breach of duty, (3) proximate cause, and (4) damages." D'Alessandro v. Hartzel, 29 A.3d 1112, 1114 (N.J. Super. Ct. App. Div. 2011). The narrow issue in the case at hand is whether, due to the wild dancing at the club, Plaintiff's falling into Harrah's pool was reasonably foreseeable, thereby obligating Defendants to provide additional security around the water.

It is well settled that businesses and commercial landowners owe a duty of care to provide a safe environment to patrons on the premises acting within the scope of their invitation. Nisivoccia v. Glass Gardens, Inc., 818 A.2d 314, 316 (N.J. 2003) (citing

Hopkins v. Fox & Lazo Realtors, 624 A.2d 1110, 1113 (N.J. 1993)). Business owners are therefore obligated "to maintain the premises in a safe condition, and to avoid creating conditions that would render the premises unsafe." Nisivoccia, 818 A.2d at 316. If a particular condition on the premises poses a foreseeable harm, defendants are considered on constructive notice of the hazard. Arroyo v. Durling Realty, LLC, 78 A.3d 584, 587 (N.J. Super. Ct. App. Div. 2013). They are therefore required to take reasonable care to prevent any harm that may arise from the hazard, and must warn patrons of dangerous conditions on the premises. See Sussman v. Mermer, 862 A.2d 572, 574 (N.J. Super. Ct. App. Div. 2004); Hopkins, 624 A.2d at 1118. However, if a patron is or should be aware of the dangerous condition because a "reasonable use of [her] faculties" would reveal it, then the landowner is relieved of his duty to warn. Id.; see also Tighe v. Peterson, 814 A.2d 1066, 1067 (N.J. 2002); D'Alessandro v. Hartzel, 29 A.3d 1112, 1116 (N.J. Super. Ct. App. Div. 2011).

Negligent security cases in particular focus on the issue of foreseeability of harm. See Clohesy v. Food Circus Supermarkets, 694 A.2d 1017, 1021-22 (N.J. 1997). If a certain type of criminal or third party activity is foreseeable, landowners are required to provide reasonable security measures to protect patrons from that harm. Id. at 1028. Failure to do so breaches the duty of care, and commercial landowners are liable for injuries that occur as the result of a foreseeable incident or a third party's foreseeable criminal conduct. Id. at 1022.

New Jersey courts consider the totality of the circumstances to determine whether third party acts are foreseeable. Id. at 1028; see also Butler v. Acme Markets, Inc., 445 A.2d 1141, 1143 (N.J. 1982). This includes "all factors that a reasonable person

would consider," such as any prior similar incidents that took place on the premises, or any escalating aggression between the parties that should have alerted the defendant to the impending harm. Clohesy, 694 A.2d at 1023; Lanigan v. Marina Dist. Dev. Co., LLC, Civil No. 08-5201 (NLH)(JS), 2011 WL 1211320, at *10-14 (D.N.J. March 28, 2011); see also Ludwiczack v. Showboat Atl. City Operating Co., Docket No. A-5189-09T1, 2011 N.J. Super. Unpub. LEXIS 1422, at *13 (N.J. Super. Ct. App. Div. June, 3 2011). In fact, "[a] lack of prior similar incidents on the premises or other compelling evidence establishing foreseeability . . . will almost always be fatal to a plaintiff claiming that the landowner had a duty to provide security." Clohesy, 694 A.2d at 1026; see also Lanigan, 2011 WL 1211320, at *10-14 (granting summary judgment for defendants in a negligent security claim in part because of plaintiff's failure to show that the previous assaults occurring in the area were similar to the unprovoked assault on plaintiff in defendants' casino elevator).

In the present case, the pool in Defendants' nightclub was an obvious hazard that Plaintiff, through "reasonable use of [her] faculties," could and should have detected. Sussman, 862 A.2d at 574. The Pool After Dark nightclub is known for the pool located in the club's center. On the evening of the incident, Plaintiff not once, but twice, went to dance right by the edge of the pool on a crowded dance floor with several people dancing around her. Even without warnings or added security, Plaintiff could have easily observed that dancing close to the edge of the pool on a packed dance floor surrounded by other people presented the possibility of another person bumping into her and causing her to fall into the water. Thus, Harrah's was not required to place extra warnings, partitions, or security around the pool to keep patrons from falling into it.

Moreover, nothing about Third Party Defendant's behavior could have indicated to Defendants that foreseeable harm to Plaintiff existed. Plaintiff never met Third Party Defendant before the night in question, never spoke to or interacted with Third Party Defendant, and only briefly noticed Third Party Defendant looking at her from across the room before she bumped Plaintiff into the pool. No visible confrontation or violence occurred between Plaintiff and Third Party Defendant to notify Defendants and their security that they would have to protect Plaintiff from Third Party Defendant's actions.

The lack of similar incidents involving patrons falling into the pool because of wild dancing further damages Plaintiff's claim. To be sure, Plaintiff cites eight incidents over the course of 2015 where individuals somehow ended up in the pool. [Dkt. 25-1 Doc. 1, at ¶ 2(b).] However, there is no indication that any of these incidents arose because patrons were wildly dancing by the pool. In fact, many of the incidents resulted from fights or other forms of escalating violence, not wild dancing. The previous incidents, therefore, are not similar enough to put Defendants on notice that patrons may get bumped into the water when the dancing gets especially rowdy. Additionally, one of the control specialists indicated that, although he had seen other patrons get bumped into the pool before, such occurrences were rare, and happened, at the most, only three times before. (Coulter Dep. 44:2-4.) Importantly, he was also unsure how those previous patrons fell into the water in the first place. Id. Therefore, Third Party Defendant's knocking Plaintiff into the pool was unforeseeable under the circumstances, and Defendants were under no duty to provide additional security to prevent that particular incident.

In any event, additional security likely would not have prevented the harm. Between twenty-five and thirty-five control specialists were already present in the nightclub. Some guards were stationed at posts around the room, others patrolled the area, and a lifeguard was on duty. Since patrons were allowed in the pool at night, putting a partition or additional signage around the water may have created a dangerous condition in and of itself, as such barriers could potentially pose a tripping hazard or prevent lifeguards from accessing the pool. Finally, even if control specialists were appointed to stand around the edge of the pool at all times – an extremely impracticable measure to provide considering the small area around the pool and the variety of locations in the club requiring security presence – there is nothing in the record that indicates Defendants could have prevented the harm.

Therefore, even when viewed in the light most favorable to Plaintiff, the evidence does not present any triable issues of material fact, and summary judgment in favor of Defendants is proper.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment.

An appropriate order shall issue.

Dated: March 2, 2020

                                              /s/    Joseph H. Rodriguez
                                              Hon. Joseph H. Rodriguez,
                                              UNITED STATES DISTRICT JUDGE